UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BELINDA WOLF,

   Plaintiff,

v.

CONSUMERS ENERGY,

   Defendant.

File No. 1:24-cv-

Hon.

# COMPLAINT AND JURY DEMAND

### COMPLAINT

Plaintiff Belinda Wolf, by her attorneys, Pinsky Smith, PC, states as follows:

### Jurisdiction, Parties, and Venue

1. This is an action requesting the Court to remedy violations of the Americans with Disabilities Act of 1990, 42 USC §12101 *et seq.* (the "ADA") and he factually related Michigan's Persons with Disabilities Civil Rights Act, MCL 37.1101 *et seq.* ("PDCRA").

2. In violation of these state and federal statutes, Defendant Consumers Energy ("Consumers," "Defendant," or "Company") discriminated against Plaintiff on account of her disability, failed to make reasonable accommodations for her,

retaliated against her for asking for accommodations, and ultimately, terminated her employment.

3. This Court has jurisdiction over this Complaint under 28 U.S.C. §§ 1331 and 1367.

4. Plaintiff is a resident of Ottawa County, Michigan, and the Western District of Michigan, Southern Division. At all times relevant to this Complaint, Plaintiff was Defendant's employee, working remotely from home in Ottawa County or in her designated Kent County facility.

5. Plaintiff has a disability as recognized under the ADA and the PDCRA.

6. Defendant is an investor-owned public utility and the principal subsidiary of CMS Energy Corporation, which is head quartered in Jackson, Michigan, and does business throughout Michigan, including in the Western District of Michigan, Southern Division.

7. Defendant is an employer as recognized in the ADA and the PDCRA.

8. Venue is proper within this judicial district under 28 USC §1391.

## Statement of Facts

### A. *Introduction and Plaintiff's Disability*

9. Plaintiff worked for Defendant for over 35 years.

10. While employed by Defendant, Plaintiff performed her duties in an entirely satisfactory manner.

11. Aside from a few minor issues back in 2017 and 2018, Plaintiff had overwhelmingly positive record with the company.

12. While on the job, on July 6, 2021, Plaintiff suffered a stroke.

13. Since her stroke, Plaintiff still struggles with residual neuro deficits from this stroke, and she will continue to struggle with these issues for life. As a result, things like busy, chaotic, noisy environments and bright lights put enormous stress on her, making it difficult to focus and function.

14. Because of her disability, Plaintiff requires the ability to work remotely from home and/or in quiet environments.

15. For approximately the first year after Plaintiff returned from work, she and most of the company worked remotely, which allowed her to perform her job well, with minimal distractions or chaotic environments.

16. However, when Consumers began requiring Plaintiff and other employees to return to work, Plaintiff's problems within the company.

### B. *Plaintiff's Roles and Ability to Work Remotely*

17. Initially hired in or around 1988, Plaintiff held many roles with the Company over the years, including Field Leader, Employee Development Consultant, Business Support Consultant, and Technical Assistant.

18. During her career with Consumers, Plaintiff held two separate roles at all times: a primary role and a "storm duty role" during active weather storms.

19. During all times relevant to this Complaint, Plaintiff's primary role was a Senior Tech Specialist. This involved scheduling for Defendant's contracted linemen for service.

20. When she first returned to work after her stroke, Plaintiff's storm duty role was a Back-Up Dispatcher ("BUD").

21. Plaintiff performed both her primary and BUD roles remotely from home throughout 2021 and into 2022.

22. However, in late summer/early fall of 2022, Consumers began requiring employees to return to in-office work at least some or all of the time.

23. For her primary role, Consumers required Plaintiff to come in-office for meetings and other events at least 8 days per month.

24. As for her BUD role, Consumers required in-person attendance for every storm.

25. Storms create a chaotic environment both in the outside world and within Consumers as a company. Between power outages, powerline problems, and

other customer service nightmares, it was an incredibly stressful environment while the Company did everything it could to maintain or fix the supply of energy for its customers.

26. Knowing that in-person work, particularly during storms, would put Plaintiff at risk for increased stressors and even an increased risk for another stroke, Plaintiff knew she needed an exemption to avoid that. Having been told that her BUD role was required to be in person, she resorted to finding a different role herself that would allow her to work remotely during storms.

27. Plaintiff learned that the Resource Assignment Tracking Manager ("RATM") role had no requirement to be in-office at that time, so she applied for and was trained to switch into it.

28. However, by the end of 2022, Consumers began to require in-person attendance for the RATM role as well for any larger storms that resulted in power outages for 50,000 or more customers.

29. Struggling with the in-office requirement because of her disability, Plaintiff talked with her supervisor Ms. Underwood-Gorsky repeatedly about her need to work remotely for her own safety and for the good of those depending on her to be able to do her job for the Company well.

30. Ms. Underwood-Gorsky herself had witnessed Plaintiff's difficulty with in-office work. During one incident, Plaintiff and her team had been called to the Owosso office for a meeting. Plaintiff was working in a cubicle with people and loud

activity all around her. Over-stimulated and unable to manage the anxiety this situation caused her, Plaintiff suffered a physical reaction, and found herself covering her ears, shaking, and bending her head down to try and calm herself. Ms. Underwood-Gorsky seemed shocked and genuinely concerned for how the environment was negatively impacted Plaintiff.

31. Because all the essential functions of both her roles could be completed remotely anyway, Plaintiff believed her request to work from home was reasonable and that Consumers would approve it.

32. Ms. Underwood-Gorsky responded that she completely understood Plaintiff's situation, and she also agreed that her roles had no reason to be in-person. She said she would obtain an exemption for Plaintiff to work remotely from home.

33. In a November 3, 2022 email between Ms. Underwood-Gorsky and another Consumer employee, Ms. Underwood-Gorsky stated that a cubical wouldn't work for Plaintiff, and that she herself was "putting in a request for exemption for Belinda" because Plaintiff "can't have any distractions—ie. [sic] people talking around her, etc." She continued, "[Belinda] either needs a quiet room with a door or an exemption to stay home… we are putting in the exemption for her to be remote."

34. But Ms. Underwood-Gorsky never did submit the exemption. Instead, she claimed to have connected with Human Resources on Plaintiff's behalf, informed Plaintiff that an exemption form wasn't needed, and then effectively denied Plaintiff's request.

35. Ms. Underwood-Gorsky lessened the in-person requirement, but she still required Plaintiff to present in office for certain meetings and for her RATM storm role.

36. When Plaintiff pushed back on the in-office requirement, particularly during storms, she was told it was a non-negotiable part of the RATM role, and that if she wanted to work remotely, she'd have to find a new storm role.

37. Ms. Underwood-Gorsky informed Plaintiff that the only accommodation Consumers would approve would be to switch to a new storm role without an in-person requirement. Ms. Underwood-Gorsky encouraged Plaintiff to identify such a role and request a transfer. She promised that she too would look out for such a role for Plaintiff.

38. Ms. Underwood-Gorsky was aware of Plaintiff's disability, her specific limitations with respect to in-office work (particularly during stressful times), and her request for accommodation.

39. Consumers failed to engage in the interactive process required by the ADA, and the accommodation Ms. Underwood-Gorsky forced on Plaintiff did not alleviate Plaintiff's issues or overcome the specific limitations she identified related.

40. Not wanting to lose her job and having been specifically informed by Ms. Underwood-Gorsky that fully remote work for her two roles was impossible, Plaintiff continued coming in office as required, as dangerous as it was for her condition.

41. On February 16, 2023, Consumers' Absence Management Services Department noticed Plaintiff was coming into the office less often than others in her department. It notified both Plaintiff and Ms. Underwood-Gorsky of the issue.

42. In response, Ms. Underwood-Gorksy confirmed that the accommodation she'd approved for Plaintiff, stating, "I told you it is okay."

43. Yet three weeks later, on March 6, 2023, for the first time, Ms. Underwood-Gorsky informed Plaintiff the total opposite: "We do need you to get a medical exemption from your doctor." She claimed she had previously been in contact with Human Resources about Plaintiff's situation, but that she should have been "more persistent in getting the correct information."

44. Plaintiff began working on collecting the information needed for the official form, and she submitted the official accommodation form on March 31, 2023.

45. As previously instructed by Ms. Underwood-Gorsky to identify a different storm role without an in-office requirement, Plaintiff found an opening for a Contractor Personnel Specialist "CPS," which contained no in-person requirement.

46. March 13, 2023, Plaintiff requested the training for the CPS role, reiterating to Ms. Underwood Gorsky her need to work completely remotely due to her disability.

47. Ms. Underwood-Gorsky approved the training for Plaintiff.

48. However, a few weeks later, Plaintiff learned that Ms. Underwood-Gorsky denied her accommodation request for the CPS position, behind Plaintiff's back, and had given the job to someone else.

49. Plaintiff challenged this decision with Ms. Underwood-Gorksy again. On April 6, 2023, Plaintiff stating in an email to Ms. Underwood-Gorsky and Resource Manager Allison Turner that she cannot continue performing her current role "due to medical reasons." But Ms. Underwood-Gorsky refused to change her decision.

50. One week later, on April 13, 2023, Plaintiff was abruptly and unexpectedly terminated from Consumers.

51. The reason for termination as stated in the termination letter was that she had allegedly "spoken negatively about coworkers, been confrontational and disrespectful to team members," and "had been observed yelling at coworkers."

52. With no other information beyond the text in this letter, Plaintiff was unable to even defend herself as she was given no identifiable examples or meaningful context to the allegations. Notably, there was also no corrective action or discipline leading up to this that would have given her an opportunity to improve, if the reasons for termination were legitimate.

53. Plaintiff appealed the termination and asked for additional information, but her appeal was denied.

54. Consumers terminated Plaintiff while her official accommodation form was still under review and consideration.

55. Ultimately, Consumers approved Plaintiff's accommodation to work remotely on April 17, 2024—four days after the Company had already terminated her.

56. Shortly after her termination, Plaintiff learned of a valuable voluntary separation program Consumers offered those who were willing to resign or retire.

57. Had she still been employed by Consumers just a week or two longer, Plaintiff could have received approximately 40 weeks of pay.

58. Instead, after 35 loyal years of service to the same company, she was left fired and without any income.

59. Consumer's actions harmed Plaintiff emotionally, physically, and financially.

## Statutory Prerequisite

60. Plaintiff filed a charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the commission of the unlawful employment practice alleged herein.

61. Plaintiff received a Notice of Right to Sue from the EEOC.

62. This action has been filed with 90 days of the receipt of Plaintiff's Notice of Right to Sue.

## COUNT I – Violation of the Americans with Disabilities Act

63. Plaintiff relies on the allegations of all prior paragraphs as if they were restated herein.

64. Defendant violated the ADA when it discriminated against Plaintiff on account of her disability, failed to engage in the interactive process, failed to provide her a reasonable accommodation, and then retaliated against her for requesting an accommodation and/or for her disability.

65. Plaintiff is disabled under the ADA and was regarded as such.

66. Defendant failed to engage in the legally required interactive process to identify Plaintiff's precise limitations and the reasonable accommodations to overcome those limitations.

67. Consumers unlawfully denied Plaintiff's requests for reasonable accommodation and forced her to continue working in conditions that worsened her condition both mentally and physically.

68. Defendant then terminated Plaintiff in discrimination of her disability and in retaliation for her requests for reasonable accommodation.

69. As a result, Plaintiff has suffered and will continue to suffer harm.

## Relief

WHEREFORE, Plaintiff requests that the Court grant the following relief:

a. Award Plaintiff damages equal to lost earnings, benefits, and/or other compensation denied or lost to her by reasons of Defendant's illegal conduct, plus interest;

b. Award Plaintiff compensatory damages for mental anguish and emotional distress;

c. Award Plaintiff punitive damages;

d. Award Plaintiff's costs and reasonable attorney's fees;

e. Issue an order reinstating Plaintiff in an appropriate position; and

f. Award Plaintiff other relief as may be just and equitable

**COUNT II – Violation of the Michigan's Persons with Disabilities Civil Rights Act**

70. Plaintiff relies on the allegations of all prior paragraphs as if they were restated herein.

71. Defendant violated the PDCRA when it discriminated against and harassed Plaintiff on account of her disability, failed to engage in the interactive process, failed to provide her a reasonable accommodation, and then retaliated against her for requesting an accommodation and/or for her disability.

72. Plaintiff is disabled under the PDCRA and was regarded as such.

73. Defendant failed to engage in the legally required interactive process to identify Plaintiff's precise limitations and the reasonable accommodations to overcome those limitations.

74. Consumers unlawfully denied Plaintiff's requests for reasonable accommodation and forced her to continue working in conditions that worsened her condition both mentally and physically.

75. Defendant then terminated Plaintiff in discrimination of her disability and in retaliation for her requests for reasonable accommodation.

76. As a result, Plaintiff has suffered and will continue to suffer harm.

## Relief

WHEREFORE, Plaintiff requests that the Court grant the following relief:

a. Award Plaintiff damages equal to lost earnings, benefits, and/or other compensation denied or lost to her by reasons of Defendant's illegal conduct, plus interest;

b. Award Plaintiff compensatory damages for mental anguish and emotional distress;

c. Award Plaintiff exemplary damages;

d. Award Plaintiff's costs and reasonable attorney's fees;

e. Issue an order reinstating Plaintiff in an appropriate position; and

f. Award Plaintiff other relief as may be just and equitable.

Dated: November 20, 2024

PINSKY SMITH, PC
Attorneys for Plaintiff

By /s/ Crystal J. Bultje
Crystal J. Bultje (P80276)
146 Monroe Center, N.W., Suite 418
Grand Rapids, MI 49503
(616) 451-8496

15 | Page

## JURY DEMAND

To the extent jury trial is allowed with regard to any of the issues herein, Plaintiff demands same.

Dated: November 20, 2024　　　　　PINSKY SMITH, PC
　　　　　　　　　　　　　　　　　Attorneys for Plaintiff

　　　　　　　　　　　　　　　　　By /s/ Crystal J. Bultje
　　　　　　　　　　　　　　　　　Crystal J. Bultje (P80276)
　　　　　　　　　　　　　　　　　146 Monroe Center, N.W., Suite 418
　　　　　　　　　　　　　　　　　Grand Rapids, MI 49503
　　　　　　　　　　　　　　　　　(616) 451-8496